## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRIAN BRANDT**                                    **CIVIL ACTION**

**VERSUS**                                          **NO: 24-574**

**CNS CORPORATION ET AL.**                          **SECTION: "H"**

## ORDER AND REASONS

 Before the Court are Defendant N.I.S. Financial Services, Inc.'s Motion to Compel Arbitration and Stay (Doc. 11), and Plaintiff's Motion to Take Judicial Notice of Documents from Dickerson Case Pursuant to Federal Rule of Evidence 201 (Doc. 19). For the following reasons, Defendant's Motion to Compel Arbitration and Stay Litigation is **GRANTED**, and Plaintiff's Motion to Take Judicial Notice is **GRANTED**.

## BACKGROUND

 This dispute arises out of Plaintiff Brian Brandt's employment with Defendant CNS Corporation of Missouri ("CNS"). Plaintiff began working for CNS in 1986 and was still employed there as of the date he filed his state court

petition.[1] Plaintiff is "in the business of soliciting and selling insurance policies, capital shares of investment companies, and mutual funds."[2]

Prior to his employment, Plaintiff signed various Agent's and Sales Representative's Contracts ("the Contracts") with Defendants CNS, N.I.S. Financial Services, Inc. ("NIS"), and Ozark National Life Insurance Company ("Ozark") that contained non-competition and non-solicitation provisions prohibiting Plaintiff from (1) "the business of soliciting" for 12 months from the date of termination within the county where Plaintiff solicited insurance and sold mutual funds for Defendants in the 12 months prior to termination; (2) engaging in or becoming "interested in, affiliated, or concerned with any activity of business that competes" with Defendants' business; and (3) contacting, soliciting, or selling to any person who is or was a customer of Defendants within 12 months before termination or three years after termination.[3] The contracts include a Missouri choice-of-law clause.

In his state court petition, Plaintiff requests a declaratory judgment that (1) Louisiana law applies, (2) the non-competition and non-solicitation provisions in the Contracts are invalid and unenforceable, and (3) upon voluntary termination or termination without cause, Plaintiff is entitled to receive commissions from Defendant Ozark.[4] On or about March 7, 2024, Defendants removed to this Court on the basis of diversity jurisdiction.

Now before the Court is Defendant's Motion to Compel Arbitration and Stay pursuant to the NIS Sales Representative's Contracts ("NIS Contract")

---

[1] Doc. 2-1 at 2. The petition was filed in the 21st Judicial District Court for the Parish of Tangipahoa on January 31, 2024. *Id.* at 1.

[2] *Id.* at 2.

[3] *Id.* Plaintiff alleges that "Defendants are affiliated and/or related companies and have common direct or indirect ownership." *Id.* at 1.

[4] *Id.* at 4–6.

executed between Plaintiff and Defendant NIS.[5] Plaintiff opposes.[6] In response, Plaintiff filed a Motion to Take Judicial Notice of Documents from "the Dickerson Case"—a case in state court between Defendant NIS and another of its independent contractors wherein the 15th Judicial District Court for the Parish of Lafayette purportedly held that claims related to enforceability of identical non-competition and non-solicitation provisions are not subject to mandatory arbitration. Defendant failed to file an opposition to Plaintiff's Motion to Take Judicial Notice.[7]

## LEGAL STANDARD

### 1. Motion for Judicial Notice

Federal Rule of Evidence 201 permits a court to take judicial notice of "an adjudicative fact" upon a party's request where the fact is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[8]

### 2. Motion to Compel Arbitration

---

[5] There are several contracts between NIS and Plaintiff spanning 2011 and 2021. Doc. 11-1 at 4-5. Plaintiff signed the 2011 NIS Sales Representative Contract but did not sign the 2021 NIS Sales Representative Contract that was signed by NIS and mailed to Plaintiff in 2020. Doc. 11-1 at 5. Plaintiff did not provide any written objection to the 2021 contract. *Id.* In its Memorandum supporting the instant motion, NIS refers to these documents collectively as the "NIS Contract" because the relevant provisions at issue are the same. *Id.* The Court adopts this term for clarity and does not delineate between the signed 2011 and unsigned 2021 contracts. *See* Bankston v. Imagine Pools Mfg. N.Am. Inc., No. CV 22-01289, 2022 WL 17814244, at *2 (E.D. La. Dec. 6, 2022) (providing that "[a]cceptance of an arbitration agreement need not include a signature, and conduct alone may show the effect or validity of the agreement.") (internal quotation marks omitted).

[6] Doc. 18.

[7] Defendant did, however, raise arguments regarding the alleged preclusive effect of the documents subject to judicial notice, which this Court considers in this ruling. *See* Doc. 22.

[8] FED. R. EVID. 201(a)–(c).

3

The question of arbitrability is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., which broadly applies to any written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction."[9] A two-step analysis governs whether parties should be compelled to arbitrate a dispute.[10] The Court must first determine whether the parties agreed to arbitrate the dispute.[11] This determination involves two separate inquiries: (1) whether there is a valid agreement to arbitrate between the parties, and, if so, (2) whether the dispute in question falls within the scope of that agreement.[12] Both inquiries are generally guided by ordinary principles of state contract law.[13] The strong federal policy favoring arbitration applies "when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope," but it does not apply "when determining whether a valid agreement exists."[14] If the Court finds the parties agreed to arbitrate, it must then proceed to the second step of the analysis and consider whether any federal statute or policy renders the claims non-arbitrable.[15]

## LAW AND ANALYSIS

### 1. *Motion for Judicial Notice*

In opposition to Defendant's Motion to Compel Arbitration, Plaintiff filed a motion for judicial notice, requesting that this Court take judicial notice of various documents filed and writ denials in *Victoria Dickerson v. N.I.S.*

---

[9] Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).
[10] JP Morgan Chase & Co. v. Conegie *ex rel.* Lee, 492 F.3d 596, 598 (5th Cir. 2007).
[11] Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004).
[12] Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008).
[13] *See* First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).
[14] *Sherer*, 548 F.3d at 381.
[15] Primerica Life Ins. Co. v. Brown, 304 U.S. 469, 471 (5th Cir. 2002).

*Financial Services, Inc. et al.*, a 2017 case filed in the 15th Judicial District Court for the Parish of Lafayette.[16] Defendant did not file an opposition to the Motion for Judicial Notice.

Each of the eleven documents that Plaintiff seeks judicial notice of were obtained from the public records of the 15th Judicial District Court for the Parish of Lafayette, the Louisiana Third Circuit Court of Appeal, and the Louisiana Supreme Court.[17] Courts may generally take judicial notice of public records in prior state court proceedings.[18] "Although we cannot take judicial notice of findings of fact of other courts, the fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice."[19] Accordingly, Plaintiff's Motion for Judicial Notice is **GRANTED** as to the eleven public records referenced in his Motion for Judicial Notice and attached to his Opposition of Defendant's Motion to Compel Arbitration.[20]

### 2. *Motion to Compel Arbitration and Stay*

Defendant NIS moves this Court to order arbitration of Plaintiff's claims against it because the claims fall within the scope of a valid arbitration agreement and, alternatively, Financial Industry Regulatory Authority ("FINRA") Rules require arbitration of the dispute. Defendant NIS also requests a stay of proceedings as to *all* Defendants—including CNS and Ozark, which do not have an arbitration agreement with Plaintiff—on the basis that

---

[16] *See* Doc. 19.

[17] *See* Doc. 19-1.

[18] Kahn v. Ripley, 772 F. App'x 141, 142 (5th Cir. 2019) (citing Taylor v. Charter Med. Corp., 162 F.3d 827, 829 (5th Cir. 1998); Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

[19] Gray *ex rel.* Beverly Enters.–Miss., Inc., 390 F.3d 400, 407 n.7 (5th Cir. 2004) (citing *Taylor*, 162 F.3d at 831).

[20] Docs. 18-3, 18-4, 18-5, 18-6, 18-7, 18-8, 18-9, 18-10, 18-11 & 18-12.

Plaintiff's claims against them are "based upon the same operative facts" and "inherently inseparable from [Plaintiff's] claims against" Defendant NIS.[21]

Plaintiff responds that issue preclusion bars Defendant NIS from arguing that Plaintiff's claims are subject to mandatory arbitration. And even if issue preclusion does not apply in this case, Plaintiff avers that the arbitration agreement is unenforceable as adhesionary, and his claims against NIS are outside the scope of the arbitration agreement. Further, Plaintiff contests whether Form U-4 and FINRA Rules mandate arbitration in this case. And even if this Court orders arbitration, Plaintiff maintains that a stay against Defendants CNS and Ozark would be inappropriate in this case. The Court considers each argument in turn.

### A. Issue Preclusion

Plaintiff argues that issues regarding "the enforceability of the non-competition and non-solicitation provisions in the NIS Sales Representative's Contract and whether such claims are subject to mandatory arbitration" are precluded by the 15th Judicial District Court's January 24, 2020 Judgment in *Dickerson v. N.I.S. Financial Services, Inc. et al.*[22] Defendant argues, however, that all elements for application of issue preclusion are not met.

"[C]ollateral estoppel or 'issue preclusion,' recognizes that suits addressed to particular claims may present issues relevant to suits on other claims."[23] When a federal court is asked to give res judicata effect to a state court judgment, it must give the same preclusive effect to the state court judgment as would be given by the courts of that state.[24] Under Louisiana

---

[21] Doc. 11-1 at 16 (quoting Hill v. GE Power Sys., Inc., 282 F.3d 343, 347 (5th Cir. 2002)) (internal quotations omitted).

[22] Doc. 18 at 10.

[23] United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C., 569 F. Supp. 2d 658, 663 (E.D. La. 2008) (citing Harris v. Washington, 404 U.S. 55 (1971)).

[24] Zatarain v. WDSU–Television, Inc., 79 F.3d 1143 (5th Cir. 1996); *see* 28 U.S.C. § 1738.

Revised Statutes § 13:4231(3), "a valid and final judgment is conclusive between the same parties . . . in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." Thus, the following elements must be present for issue preclusion to apply: (1) a valid and final judgment; (2) the parties must be identical; (3) the issue to be precluded must be identical to that involved in the prior action; and (4) the issue must have been actually litigated and its determination was essential to the prior judgment.[25] Each and every element must be "established beyond all question."[26]

In *Dickerson*, the plaintiff—an independent contractor for Defendant NIS—filed a petition for declaratory judgment, seeking

> a judgment declaring the noncompetition and/or nonsolicitation provisions contained in the [Sales Representative's Contract and Agent's Contract]: (a) are governed by Louisiana law; (b) do not comply with the provisions of Louisiana Revised Statute 23:921; and (c) are therefore null and void, invalid and unenforceable as a matter of law.[27]

Plaintiff avers that the relevant provisions in the Sales Representative's Contract and Agent's Contract at issue in *Dickerson* were identical to those in the Contracts at issue here.

The defendants in *Dickerson*—NIS and Ozark—filed a motion to compel arbitration, wherein they argued that Dickerson was required to arbitrate her claim against NIS according to "Louisiana law, FINRA rules, and the terms of

---

[25] *See* Jones v. Daimler Trucks of N. Am., Inc., 336 So. 3d 622, 627 (La. App. 4 Cir. 2022); *In re* Keaty, 397 F.3d 264, 270–71 (5th Cir. 2005) (citing Charpentier v. BG Wire Rope & Slings, Inc., 174 B.R. 438, 441 n.1 (E.D. La. 1994); Matter of Whittaker, 225 B.R. 131 (Bankr. E.D. La. 1998)).

[26] Kelty v. Brumfield, 633 So. 2d 1210, 1215 (La. 1994) (internal citations omitted).

[27] Doc. 18-4 at 4.

Plaintiff's agreement."[28] The motion to compel arbitration was denied by the 15th J.D.C. on October 5, 2017.[29]

Considering the issues raised in *Dickerson* and the issues presently raised in this case, the Court considers whether each element for application of issue preclusion is present and has been established beyond all question.

### i. *Valid and Final Judgment*

The parties dispute whether the court's ruling in *Dickerson* that the plaintiff's claims were not subject to mandatory arbitration was indeed final for purposes of issue preclusion.

> As to the first requirement of issue preclusion, for purposes of *res judicata*, a valid judgment is one rendered by a court with jurisdiction over both the subject matter and the parties after proper notice was given, and a final judgment is one that disposes of the merits in whole or in part.[30]

Louisiana courts have generally held that orders on motions to compel arbitration are interlocutory and not final judgments because they do not dispose of the merits of a case in whole or in part.[31]

Plaintiff nevertheless contends that the state court's order denying the motion to compel arbitration became a final judgment "after the matter

---

[28] Doc. 18-6 at 1.

[29] *See* Doc. 18-5 (motion to compel arbitration); Doc. 18-6 (memorandum in support of motion to compel arbitration), Doc. 18-7 (order denying the motion to compel arbitration).

[30] Global Mktg. Solutions, LLC v. Chevron USA Inc., 286 So. 3d 1054, 1062 (La. App. 1 Cir. 2019) (citing Oliver v. Orleans Par. Sch. Bd., 156 So. 3d 596, 612 (La. 2014)). *See also* LA. CIV. CODE art. 1841 ("A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment. A judgment that determines the merits in whole or in part is a final judgment.").

[31] *See, e.g.*, Arkel Constructors, Inc. v. Duplantier & Meric, Architects, L.L.C., 965 So. 2d 455, 158 (La. App. 1 Cir. 2007) (holding that "[t]he ruling denying arbitration appears to be, by definition, an interlocutory ruling—one that does not determine the merits, but only preliminary matters in the course of the action"); Collins v. Prudential Ins. Co. of Am., 752 So. 2d 825, 829 (La. 2000) (holding that "the district judge's order compelling arbitration in this case was clearly not a final judgment" because "it did not dispose of the merits of the case in whole or in part").

proceeded to a hearing on the merits of NIS's exceptions held on July 8, 2019, when the Court entered a final Judgment dated January 24, 2020."[32] There, the state court granted the exceptions of lack of subject matter jurisdiction, mootness, and lack of right or interest filed by CNS and NIS.[33] The Court stated that these motions were granted, and the plaintiff's petition was dismissed with prejudice, "[b]ecause of the Stipulation" between NIS, CNS, and Plaintiff that NIS and CNS would not "take any further action against Plaintiff Victoria Dickerson to enforce or seek damages for breach of the non-solicit and non-competition restrictive covenants that are the subject of Plaintiff's declaratory judgment claims."[34]

The phrasing of the judgment dismissing the case in *Dickerson* suggests to this Court that it was based solely on the stipulated agreement between the plaintiff and Defendants NIS and CNS. In other words, the judgment on the exceptions spung exclusively from the consent of the parties. Therefore, while it was not labeled as such, the Court finds that the judgment of dismissal in *Dickerson* can only be characterized as a consent judgment.[35] Consent judgments are final judgments *between the parties*.[36] "A consent judgment or a stipulated judgment is a bilateral contract by which the parties adjust their differences by mutual consent, with each party balancing his hope of gain against his fear of loss."[37] "A stipulation entered into by and between parties to a lawsuit and later incorporated into a consent judgment in the lawsuit is a

---

[32] Doc. 25 at 1.

[33] Doc. 18-12 at 1.

[34] *Id.*

[35] *See* Garland v. Cargill, 602 U.S. 406, 430 (2024) (Sotomayor, J., dissenting) ("When I see a bird that walks like a duck, swims like a duck, and quacks like a duck, I call that bird a duck").

[36] Hardy v. Hardy, 273 So. 3d 448, 453 (La. App. 1 Cir. 2019) (citing Mill Creek Homeowners Ass'n, Inc., 916 So. 2d 268, 269 (La. App. 1 Cir. 2005)) (emphasis added).

[37] *Id.*

transaction or compromise between the parties for the purpose of preventing or putting an end to the lawsuit in the manner in which they agree."[38] A consent judgment ordinarily does not give rise to issue preclusion because the issues underlying the judgment are neither actually litigated nor necessary and essential to the judgment. However, consent judgments *will* be given preclusive effect if the parties manifest such an intention.[39] Critically, in *Dickerson*, the original parties to the consent judgment did not manifest an intention to be bound by the arbitrability finding in the case with a new plaintiff or against a new defendant, nor did the judgment explicitly mention binding third parties.[40] Thus, the consent judgment in *Dickerson* lacks preclusive effect here. Accordingly, the Court is not satisfied beyond all question that the August 2020 state court judgment is a valid and final judgment for purposes of applying issue preclusion.

### ii. Issue Actually Litigated and Determination Was Essential to Prior Judgment

Issue preclusion also requires that "the issue must be one that has been actually litigated and determined in the prior action, and its determination must have been essential to the prior judgment."[41] In other words, "[i]ssue preclusion requires the issue to be precluded to have been a dispositive issue which the prior court *must have considered* in a contest between the same

---

[38] Aufrichtig v. Aufrichtig, 34,909—CA (La. App. 2 Cir. 8/22/01); 796 So. 2d 57, 63 (citing LA. CIV. CODE art. 3071). In *Dickerson*, Defendants CNS and NIS's stipulation was incorporated into the consent judgment.

[39] Hughes v. Santa Fe Intern. Corp., 847 F.2d 239, 241 (5th Cir. 1988).

[40] Dowd v. Helena Emergency Physicians, 2023-527 (La. App. 3 Cir. 3/27/24); 387 So. 3d 31, 36, writ denied sub nom. Dowd v. Helena Emergency Physicians, 2024-00536 (La. 9/17/24) ("Ordinarily, contracts are only binding between the parties to the contract"). While the Court, and the parties, concede that the parties in the instant case qualify as "identical parties" for the purposes of res judicata, it cannot be said that they are the original parties bound by the *Dickerson* consent judgment.

[41] *Jones*, Inc., 336 So. 3d at 628 (quoting *Global Mktg. Solutions*, 286 So. 3d at 1063)).

parties."[42] Louisiana courts have noted, however, that "[t]here is nothing in the case law defining the term 'actually litigated' to require a trial or evidentiary hearing. . . . Louisiana law does not mandate that an issue must be decided after a trial or evidentiary hearing to be considered 'actually litigated.'"[43]

As to whether the issue was essential to the prior judgment, the Court notes that the parties do not contest whether this element is met. The Court must nevertheless find that Plaintiff has proven this element "beyond all question."[44] Here, even if the Court had found *arguendo* that the judgment was a final judgment for the purpose of applying issue preclusion, the Court would not be able to find that the denial of arbitration was essential to that final judgment. A complete review of the *Dickerson* record does not reveal why Defendants ultimately entered into the stipulation that formed the basis of the consent agreement. The Court would, therefore, be required to speculate about what prompted Defendants NIS and CNS to stipulate to the terms agreed to in the *Dickerson* judgment.[45]

As such, because this Court cannot ascertain whether the denial of arbitration was essential to the state court's judgment in *Dickerson*, the enforceability of the non-competition and non-solicitation provisions in the NIS Contract and whether such claims are subject to mandatory arbitration, is not

---

[42] *Id.* (quoting Goodman v. Spillers, 686 So. 2d 160, 167 (La. App. 2 Cir. 1996)) (emphasis in original).

[43] *Id.* (quoting *In re* Keaty, 397 F.3d 264, 271 (5th Cir. 2005)).

[44] *Kelty*, 633 So. 2d at 1215 (internal citations omitted).

[45] There is a myriad of reasons why Defendants NIS and CNS might have decided to stipulate and not pursue the contract's non-competition and non-solicitation provision against the plaintiff in *Dickerson*. Litigants, especially businesses, regularly partake in cost-benefit analyses regarding what claims to pursue and when to settle. These determinations, often made in private, are not clear from the *Dickerson* record. As such, the Court would be making a guess that cannot meet the "beyond all question" standard required by issue preclusion.

barred by issue preclusion.[46]Accordingly, the Court declines to apply issue preclusion in this case.

### B. *Agreement to Arbitrate*

Because the Court has declined to apply issue preclusion, it must determine whether the parties should be compelled to arbitrate.

The arbitration provision in Paragraph 18(c) of the NIS Contract at issue reads:

> **Remedy**: Sales Representative agrees that all controversies that may arise between Sales Representative and Company concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us, shall be determined by arbitration before a panel of arbitrators selected by the Financial Industry Regulatory Authority or the New York Stock Exchange, Inc., as Sales Representative and Company may designate, pursuant to the rules of the organization in existence at the time of the submission to arbitration.[47] ("Arbitration Provision")

### i. *Validity of Arbitration Agreement*

First, the Court must determine whether there was a valid agreement to arbitrate between the parties. Plaintiff argues that the Arbitration Provision is invalid as adhesionary.[48] Plaintiff contends that because the contract was drafted without any negotiation with or input from him, it is a standard form contract and raises the inquiry as to whether he truly consented to the arbitration provision.[49] Additionally, Plaintiff claims in a

---

[46] *See* Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co., 801 F.2d 748, 751–52 (5th Cir. 1986).

[47] Doc. 11-2 at 10, ¶18(c).

[48] Doc. 18 at 13.

[49] *Id.* at 14-15.

declaration not to have understood  the terms of Paragraph 18(c) to mean that the validity and scope of the non-competition and non-solicitation provision would be determined by arbitrators. The Court considers these arguments in turn.

Ordinary principles of state contract law apply to the determination of whether parties formed a valid arbitration agreement.[50] The NIS Contract containing the Arbitration Provision contains a Missouri choice of law provision that Plaintiff himself acknowledges.[51] However, regardless of what state contract law governs, the outcome of the foregoing analysis remains the same.[52]

Under Louisiana law, a contract is formed by consent of all parties.[53] "Broadly defined, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party."[54] Plaintiff argues that the agreement is adhesionary because NIS drafted the NIS Contract without negotiating with Plaintiff regarding its terms.[55] However, "not every contract in standard form may be regarded as a contract of adhesion."[56] In *Duhon v. Activelaf, LLC*, and *Aguillard v. Auction Management Corp.*, the Louisiana Supreme Court set forth factors to consider to determine the enforceability of the arbitration clause in a standard form contract: "(1) the physical characteristics of the

---

[50] Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537–38 (5th Cir. 2003).

[51] *See* Doc. 2-1 (Petition for Declaratory J.), at ¶20 ("It is undisputed that the Contracts purportedly contain a Missouri choice-of-law provision.")

[52] *See* Edwards v. Doordash, Inc., 888 F.3d 738, 744 (5th Cir. 2018) (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70 (2010)) ("An arbitration agreement is severable from the underlying contract under Section Two of the Federal Arbitration Act.").

[53] Chase Bank USA, N.A. v. Leggio, 999 So. 2d 155, 159 (La. App. 2d Cir. 2008) (citing LA. CIV. CODE art. 1927).

[54] Aguillard v. Auction Mgmt. Corp., 908 So. 2d 1, 8–9 (La. 2005) (internal quotation omitted).

[55] Doc. 18 at 14-15.

[56] Duhon v. Activelaf, LLC, No. Civ.A. 02-2231, 2016 WL 6123820, at *4 (La. 10/19/16).

arbitration clause, (2) the distinguishing features of the arbitration clause, (3) the mutuality of the arbitration clause, and (4) the relative bargaining strength of the parties."[57] The court "effectively established a framework for examining the validity of an arbitration clause within a standard form contract by generally describing the characteristics of an unenforceable adhesionary agreement."[58] It further noted that the "real issue in a contract of adhesion analysis is not the standard form of the contract, but rather whether a party truly consented to all the printed terms. Thus, the issue is one of consent."[59] "The party seeking to invalidate the contract as adhesionary bears the burden of demonstrating that the non-drafting party did not consent to the terms or his consent was vitiated by error."[60] Further, under a contract of adhesion analysis, "a presumption of arbitrability does exist" regarding the provision's enforceability.[61]

In *Duhon*, the Louisiana Supreme Court considered an arbitration clause in an agreement that patrons to Sky Zone, an indoor trampoline park, were required to sign prior to entering the facility.[62] The court concluded that the agreement was adhesionary and unenforceable because (1) the arbitration provision was "not relegated to a separate paragraph or set apart in some explicit way" but was instead "camouflaged" within a larger paragraph unrelated to arbitration, and (2) the agreement lacked mutuality and did not bind Sky Zone to arbitration.[63]

---

[57] *Id.*

[58] *Id.*

[59] *Aguillard*, 908 So. 2d at 9.

[60] Herring v. Patterson Structural Moving & Shoring, LLC, No. CV 17-8677, 2017 WL 6540614, at *2 (E.D. La. Dec. 21, 2017).

[61] *Aguillard*, 908 So. 2d at 18.

[62] *Duhon*, 2016 WL 6123820, at *1.

[63] *Id.* at *4.

In *Aguillard*, the Louisiana Supreme Court considered an arbitration provision in an auction sales agreement and ultimately held that the agreement was not adhesionary because (1) the agreement was in a single sentence paragraph set apart from each other paragraph, in a short, two-page document; (2) the provision was not concealed; (3) the agreement did not lack mutuality because the defendants did not reserve the right to litigate; and (4) the underlying transaction was not such a necessary transaction as to compel the plaintiff to enter it.[64]

Here, while the entirety of the contract between Defendant NIS and Plaintiff is significantly more substantial than the two-page document considered in *Aguillard*, the arbitration provision was relegated to its own paragraph that begins with the underlined term "Remedies," clearly demarcating it from surrounding provisions that had were of the same size and font.[65] Additionally, the contract neither expressly reserves NIS's right to litigate nor prohibits Plaintiff from requesting arbitration.[66] Therefore, the contract does not want for mutuality.

Plaintiff suggests that the Arbitration Provision was drafted as the result of unequal bargaining power between himself and NIS. Louisiana appellate courts have, however, rejected this argument in the employer-employee setting. In *Stadtlander v. Ryan's Family Steakhouses, Inc.*, the Louisiana Second Circuit Court of Appeal held that it was "reluctant to find the requisite difference in bargaining positions between [an employee and employer] to justify labeling the present agreement a contract of adhesion" where the employee "could have found a similar position elsewhere [and] could

---

[64] *Aguillard*, 908 So. 2d at 5 and 17.
[65] *See id.* at 16 (noting that nine-point font was "not unreasonably small").
[66] *Id.* (noting that "[n]owhere in the document do the defendants reserve to themselves the right to litigate any issue arising from the contract).

have avoided the arbitration agreement had she objected to it by simply choosing to work elsewhere."[67] Further, there is no evidence that Plaintiff was compelled to enter into the agreement with NIS.[68]

Plaintiff contends that in addition to his lack of participation in the contract drafting process, he did not understand Paragraph 18(c) to require arbitration of the non-competition and non-solicitation provisions, and, therefore, did not consent to its terms.[69] This, too, fails to make the Arbitration Provision adhesionary since "[i]t well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."[70] As such, Plaintiff cannot avoid arbitrating his claims on the grounds that he did not understand the terms of the Arbitration Provision when he signed the NIS Contract.

Accordingly, having considered the factors espoused in *Duhon* and *Aguillard*, this Court finds that the Arbitration Provision does not have the "characteristics of an unenforceable adhesionary agreement."[71] The Arbitration Provision is clearly labeled, not concealed in any way, and the Plaintiff was free to object to the NIS Contract by not signing it or choosing different employment. It cannot be said that Plaintiff did not consent to the NIS Contract or provisions therein. Having found that neither the NIS

---

[67] 794 So. 2d 881, 890 (La. App. 2 Cir. 2001); *see also* Simpson v. Pep Boys-Manny Moe & Jack, Inc., 847 So. 2d 617, 622 (La. App. 4 Cir. 2003) (stating that the plaintiff had "the option of not signing the agreement and finding work at another automotive repair shop if he did not wish to be bound to arbitration"); Rogers v. Brown, 986 F. Supp. 354, 359 (M.D. La. 1997) ("Plaintiff has failed to submit any evidence that other similar jobs were not available and thus, she was required to take the KFC job even though she did not approve of the arbitration provision.").

[68] *See* Doc. 22 at 2-3.

[69] Doc. 18 at 14-15.

[70] *Aguillard*, 908 So. 2d at 17.

[71] *See Duhon*, 2016 WL 6123820, at *4.

Contract nor the Arbitration Provision are adhesionary, this Court finds that Plaintiff and Defendant NIS have entered into a valid agreement to arbitrate.

ii.    *Scope of Arbitration Agreement*

Having found that there is a valid arbitration agreement, the Court next considers whether Plaintiff's claims fall within the scope of such agreement. Defendant NIS avers that both federal and state policy suggest that doubts about the scope of arbitration should be resolved in favor of arbitration.[72] Plaintiff argues that his Request for Declaratory Relief is outside the scope of the Arbitration Provision because (1) he did not breach the non-competition and non-solicitation provisions, making the paragraph including the Arbitration Provision inapplicable; (2) there was no controversy when he filed the suit, and (3) the provision is too narrowly constructed, limiting itself to controversies arising after and in the event of the breach of the Covenant Not to Compete and not to issues of validity or enforceability the Plaintiff raises in his request for relief.[73] Beyond these arguments, Plaintiff calls on Paragraph 18(d) of the NIS-Brandt Contract to act as a savings clause.[74] The Court dispels with Plaintiff's strained arguments in one stroke.

"Even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, a court should decide the question of construction in favor of arbitration."[75] "As a consequence, a valid agreement to arbitrate applies

---

[72] *See* Doc. 11-1 at 12 (quoting Safer v. Nelson Fin. Group Inc., 422 F.3d 289, 294 (5th Cir. 2005)).

[73] Doc. 18 at 15-16 (internal quotation marks omitted).

[74] *See* Doc. 18 at 16-17.

[75] *Aguillard* at 18.

'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'"[76]

In his complaint, Plaintiff seeks a declaratory judgment that the non-competition and non-solicitation provisions in the Contracts are invalid and unenforceable as a matter of law.[77] The Court finds that the Arbitration Provision's construction is broad enough to cover these issues. The filing of the suit created a controversy under the terms of the Provision regardless of whether Plaintiff breached the agreement prior or after.[78] Such a controversy must be arbitrated.

"Where… an arbitration provision purports to cover all disputes 'related to' or 'connected with' the agreement, [the Fifth Circuit has] held that the provision is not limited to claims that literally 'arise under the contract,' but rather embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."[79] Whether or not the provisions cited in Plaintiff's complaint are enforceable concerns the "continuation, performance or breach" of the NIS Contract; it is therefore covered by the language of the Arbitration Provision.[80] The NIS Contract's non-competition and non-solicitation provisions are disputes

---

[76] Pers. Sec. & Safety Sys. Inc. v. Motorola Inc., 297 F.3d 388, 392 (5th Cir. 2002) (quoting Neal v. Hardee's Food Systems, Inc., 918 F.2d 34, 37 (5th Cir. 1990).

[77] Doc. 2-1 at 4.

[78] Doc. 11-1 at 13.

> If this Court were to rule in Mr. Brandt's favor on his declaratory judgment claim against NIS, that ruling would constitute a finding that non-compliance with the non-competition and non-solicitation provisions in the NIS Agreement does not constitute a breach of the NIS Agreement and/or performance under the NIS Agreement. Therefore, his claim against NIS concerns the 'continuation, performance or breach' of the Contract and is arbitrable. *Id.*

[79] *Pers. Sec. & Safety Sys. Inc.*, 297 F.3d at 393 (citing Pennzoil Expl. and Prod.n Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998). The Court finds "concerning" in Paragraph 18(c) analogous to "related to" and "connected with" in this standard.

[80] Doc. 11-2 at 10, ¶18(c).

between NIS and Plaintiff that have a significant relationship to the contract because it involves Plaintiff engaging in work that would directly impact the business of his employer, NIS.

Plaintiff argues that this Court—"not a panel of FINRA or NYSE arbitrators"—should decide whether the terms of the non-competition and non-solicitation provisions are reasonable or not. In so arguing, he relies on Paragraph 18(d) which provides that:

> **<u>Limitation of Covenant</u>**: If a court of competent jurisdiction enters a final non-appealable judgment or order that the time or the area or any other provision of this Paragraph constitutes an unreasonable restriction on the Sales Representative, the provisions of this Paragraph shall not be rendered void but shall apply as to such time or to such other said court may judicially determine or indicate or, if such court does not so determine or indicate, to the extent that any pertinent statute or judicial decision in the jurisdiction of any such court may indicate constitutes a reasonable restriction under the circumstances.[81]

Plaintiff argues that Louisiana Civil Code Article 2050 and its call that "[p]rovisions of a contract must be interpreted *in pari materia* and consistent with the meaning as a whole" supports his argument.[82] Indeed, Paragraph 18(d) must be read as a whole, and it must be read considering its location just below the Arbitration Provision in Paragraph 18(c). This suggests that the determination of the issues therein are ones that shall be arbitrated.

This Court finds that Paragraph 18(d) does not explicitly or otherwise exclude from arbitration an action to declare the non-competition provision unenforceable; it simply states that a court of competent jurisdiction might

---

[81] *Id.*, ¶18(d) (emphasis added).
[82] *See* Doc. 18 at 16-17.

19

render a decision about the restrictions in the Arbitration Provision.[83]  The language of Paragraph 18(d) does not trump Plaintiff's agreement to arbitrate. Thus, having found that the determination of whether the non-competition and non-solicitation provisions violates Louisiana law is a controversy relating to the "continuation, performance or breach" of Plaintiff's agreements with NIS, this Court finds the issues must be sent to arbitration. And, while NIS and Plaintiff argue in their respective filings about whether FINRA and the U-4 Form Plaintiff signed compel arbitration—this Court, having already found that the NIS Contract compels arbitration of the issues in this matter—will not address these arguments.[84]

### iii.  *Federal Statute or Policy Prohibiting Arbitrability of Claims*

Plaintiff does not raise any federal policy or statutes that would render the claims non-arbitrable. Accordingly, Plaintiff shall arbitrate the claims brought herein.[85]

### C. Stay Pending Arbitration

---

[83] *See* Pro. Ass'n of Ct. Sec. Officers - S. Dist. of Texas v. Centerra Grp., LLC, No. 4:23-CV-01813, 2023 WL 7285540, at *4 (S.D. Tex. Nov. 3, 2023) (finding that "[i]n the Fifth Circuit, the presumption of arbitrability is rebutted only if the party resisting arbitration shows either (1) the existence of an express provision excluding the grievance from arbitration or (2) the 'most forceful evidence' of a purpose to exclude the claim from arbitration.") and Weiner v. Tootsie Roll Indus., Inc., 412 F. App'x 224, 228 (11th Cir. 2011) (finding that "[b]ecause the Arbitration Act creates a presumption in favor of arbitrability, the parties must clearly express their intent to exclude categories of claims from their arbitration agreement. The provision of the covenant not to compete cited…does not exclude from arbitration an action to declare the covenant wholly unenforceable.") (internal citations and quotation marks omitted).

[84] *See* Doc. 11-1 at 14-15, Doc. 18 at 17-21, and Doc. 22 at 8-10.

[85] Priebe v. Advanced Structural Techs., Inc., No. CV 21-1274-WBV-DMD, 2021 WL 4893614, at *4 (E.D. La. Oct. 20, 2021) (finding that when a plaintiff relied exclusively on Louisiana law to find an arbitration provision invalid, this prong was not satisfied).

Defendant NIS asks the Court to stay litigation not only for the claims Plaintiff brings against it, but also those claims that Plaintiff is pursuing against Ozark and CNS Corporation citing the two entities' interrelatedness and the identical nature of the issues and claims that will be adjudicated in arbitration if it is compelled.[86] Plaintiff argues that this is not appropriate because none of Plaintiff's contracts with Ozark or CNS contain an arbitration provision and neither CNS nor Ozark is a FINRA member and therefore not subject to FINRA's arbitration rules.[87] Plaintiff goes further to say that staying proceedings against CNS and Ozark would "forc[e] him to continue with uncertainty of whether he is bound to comply with the non-competition and non-solicitations provisions"—an outcome he states would go against Louisiana public policy.[88]

### i.    Claims against NIS

Defendant has asked the Court to stay this matter pending arbitration. Pursuant to 9 U.S.C. § 3, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Having found that Plaintiff's claims against NIS are properly referable to arbitration, the Court finds that the matter should be stayed and administratively closed pending arbitration.

### ii.    Claims against CNS and Ozark

"Courts may stay proceedings as to multiple defendants pending the outcome of arbitration, even if some of those defendants are non-signatories to

---

[86]  *See* Doc. 11-1 at 16.
[87] Doc. 18 at 21.
[88] *Id.*

the arbitration agreement."[89] The Court's discretion to stay litigation in such cases is dependent not on the identity of the parties, but rather on whether the "charges against the two non-signatory defendants were based on the same operative facts."[90]

Here, the claims brought by Plaintiff relating to the relevant non-competition and non-solicitation provisions in his contracts with NIS are identical in nature to and are, therefore, "inherently inseparable" from, its claims against the identical provisions in his respective contracts with CNS and Ozark regardless of their status as FINRA members.[91]

Further, Defendant NIS avers that the claims against Ozark and CNS must be stayed to give full effect to the arbitration provision in the NIS Agreement, and this Court agrees. "If the [non-signatory] was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."[92] Further, the strength of the state and federal policies in favor of staying litigation until the conclusion of arbitration overcomes Louisiana's policy disfavoring covenants not to compete and any potential prejudice Plaintiff might experience while he waits for the matter to be arbitrated thoroughly.[93] As such, Plaintiff's claims against be stayed regarding Defendants CNS, Ozark and NIS must be stayed pending resolution of the arbitration proceedings between Plaintiff and NIS.

---

[89] Francisco v. Stolt-Nielsen, S.A., No. Civ.A. 02-2231, 2002 WL 31697700, at *6 (E.D. La. Dec. 3, 2002) (citing Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 528 (5th Cir. 2000)).

[90] Id. (quoting Sam Reisfeld & Son Imp. Co. v. S. A. Eteco, 530 F.2d 679, 680 (5th Cir. 1976)).

[91] See Doc. 18-2 at 14, ¶21 and Doc. 18-3 at 14, ¶21; see Sam Reisfeld & Son Imp. Co. at 681.

[92] Sam Reisfeld & Son Imp. Co., 530 F.2d at 681.

[93] See 9 U.S.C. § 3 (stating "Upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under such an agreement, [the Court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement….").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion to Take Judicial Notice of Documents from Dickerson Case Pursuant to Federal rule of Evidence 201 (Doc. 19) is **GRANTED**. Defendant's Motion to Compel Arbitration and Stay Litigation (Doc. 11) is **GRANTED**. Plaintiff and NIS are compelled to arbitrate this dispute with the terms of the Contracts. This matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration.

New Orleans, Louisiana this 15th day of October, 2024.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**